IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RICHARD W. NEICE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:14-CV-00024 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Richard W. Neice ("Neice"), filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Neice alleges that the Administrative Law Judge ("ALJ") erred by improperly questioning the vocational expert and by failing to give greater weight to the consultative examiner's opinion. Neice also asserts that the case should be remanded to the Commissioner to consider additional evidence submitted to the Appeals Council. I agree that the ALJ did not provide a sufficient explanation for the weight given to the consultative examiner's opinion, and further that the additional evidence submitted to the Appeals Council is new, material, and should be considered by the Commissioner. As such, I **RECOMMEND GRANTING IN PART** Neice's Motion for Summary Judgment (Dkt. No. 15), **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. No. 17), and reversing and remanding this case pursuant to

1

sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Report and Recommendation.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Neice failed to demonstrate that she was disabled under the Act.[1]  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted).  The final decision of the Commissioner will be affirmed where substantial evidence supports the decision.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Neice protectively filed for SSI and DIB on February 3, 2010, claiming that his disability began on December 31, 2009.  R. 294-97, 326.  The Commissioner denied his application at the initial and reconsideration levels of administrative review.  R. 134-65, 168-201.  On June 20, 2012, ALJ Jeffrey J. Schueler held a hearing to consider Neice's disability claim.  R. 69-107.  Neice was represented by an attorney at the hearing, which included testimony from Neice and vocational expert Mark Holland.  R. 69-107.

---

[1] The Act deems a person disabled for SSI purposes "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. § 1382c(a)(3)(B).

On June 26, 2012, the ALJ entered his decision analyzing Neice's claim under the familiar five-step process[2] and denying Neice's claim for benefits. R. 51-68. The ALJ found that Neice suffered from the severe impairments of bipolar disorder, low back pain, left elbow pain, prostatitis, and alcohol abuse. R. 56. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 57. The ALJ decided that Neice retained the RFC to perform light work,[3] except work involving:

> exposure to extreme cold or hazards; requires more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling. Additionally, the claimant requires work limited to simple, routine, repetitive tasks, in a low-stress work environment defined has [sic] having only occasional decision-making or changes in work setting, and that involves only occasional interaction with co-workers or the public.

R. 58. The ALJ determined that Neice could not return to his past relevant work as a pipe fitter helper or tree trimmer (R. 61), but that Neice could work at jobs that exist in significant numbers in the national economy such as a garment folder, marker, or checker. R. 62. Thus, the ALJ concluded that he was not disabled. R. 63. On November 13, 2013, the Appeals Council denied Neice's request for review (R. 1–6), and this appeal followed.

---

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[3] An RFC is an assessment, based upon all of the relevant evidence, of what a claimant can still do despite his limitations. 20 C.F.R. § 404.1545. Descriptions and observations of a claimant's limitations by him and by others must be considered along with medical records to assist the Commissioner in deciding to what extent an impairment keeps a claimant from performing particular work activities. Id.

# ANALYSIS

## Absence of Physical Restriction in Vocational Expert Hypothetical & RFC

Neice alleges that the ALJ failed to include a limitation for his left elbow pain both in the hypothetical presented to the vocational expert and in the RFC. Dkt. No. 16, p. 11. Neice claims that the vocational expert was not provided the opportunity to consider whether an individual with elbow impairment could perform the jobs identified. Id. at 12. At the administrative hearing, the ALJ asked the vocational expert to determine the number of jobs available for an individual with Neice's vocational background and his ultimately determined RFC. R. 97-100. The vocational expert testified that such an individual could work as a garment folder or a packager. R. 100.

The purpose of a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). A vocational expert's opinion must be given in response to proper hypothetical questions, which fairly set out all of the claimant's impairments. Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) (quoting Walker, 889 F.2d at 50). The ALJ has "some discretion to craft hypothetical questions to communicate to the vocational expert what the claimant can and cannot do." Fisher v. Barnhart, 181 F. App'x 359, 364 (4th Cir. 2006). Hypothetical questions should adequately reflect the plaintiff's RFC as found by the ALJ and supported by sufficient evidence. Id.

Substantial evidence supports the ALJ's RFC determination for Neice's physical limitations. "[F]ailure to include a severe impairment in a complainant's RFC determination is not itself error. The ALJ's conclusion that a claimant has severe impairments is made at Step Two of the sequential evaluation and is separate and distinct from the ALJ's assessment of a

4

claimant's RFC, considered as part of Steps Four and Five." Mills v. Astrue, No. CA 2:10-1657-CMC, 2011 WL 3840989, at *2 (D.S.C. Aug. 26, 2011). Additionally, the ALJ noted skepticism of Neice's credibility regarding his elbow pain, despite finding it as a severe impairment. In his explanation for Neice's RFC, the ALJ found that "X-rays do not suggest the presence of a condition that can reasonably be expected to cause the degree of pin [sic] and physical limitations he claims. Clinical findings are notable only for tenderness, and they document intact range of motion and the absence of any neurological deficits." R. 60-61. The ALJ did not find that the record demonstrated a functional limitation, particularly because treatment had been very conservative and Neice had not received a referral for further evaluation or treatment. R. 61. Without a finding of a functional limitation, the ALJ was not required to add such a limitation to the RFC. See, e.g., Thompson v. Astrue, 442 F. App'x 804, 806 (4th Cir. 2011) ("Here, although the ALJ gave Thompson the benefit of the doubt at step two, finding her depression and anxiety disorders were severe impairments, at step four the ALJ noted that Thompson had been successfully treated and therefore concluded that her mental residual functional capacity ("RFC") was not restricted."); Mills, No. CA 2:10-1657-CMC, 2011 WL 3840989, at *2.

Very little evidence in the record addresses Neice's left elbow impairment. As of June 28, 2010, Neice did not report left elbow pain. R. 660 ("Positive for back pain. Negative for neck pain and joint pain."). During the same June 2010 visit, Neice noted an "elbow arthroplasty nec" in his past surgical history; however, he did not state which elbow had been repaired. R. 661. An MRI conducted on January 18, 2011 reviewed his right elbow pain, which showed no abnormalities other than "minimal tendinosis involving the triceps tendon." R. 917. On November 28, 2012, Adam Shiner, M.D. found no evidence of Tinel's in his elbow. R. 30. The record otherwise does not address a limitation in Neice's elbow.

5

For Neice's elbow impairment alone, the question posed to the vocational expert "fairly set out all of claimant's impairments." See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). The ALJ elicited testimony from a vocational expert and presented a hypothetical describing an individual with Neice's RFC. R. 97-100. Although the ALJ did not address Neice's left elbow impairment in his question to the expert, he was not required to do so. The ALJ does not have to ask about a severe impairment in his hypothetical to the vocational expert if he has determined that the impairment does not cause any functional limitations. Smith v. Comm'r of Soc. Sec., No. 4:13-CV-00061, 2014 WL 5622840, at *7 (W.D. Va. Nov. 4, 2014) ("Accordingly, the Fourth Circuit found that the ALJ's hypothetical that reflected the claimant's RFC as determined at step four, but not limitations identified at step two, was proper.") (citing Thompson v. Astrue, 442 F. App'x 804 (4th Cir. 2011) (per curiam)). Moreover, claimant's attorney questioned the vocational expert and did not ask about the impact of Neice's left elbow impairment on available job opportunities. R. 102-04. The ALJ's hypothetical question to the vocational expert fully incorporated all of the limitations set forth in the ALJ's denial decision.

### Opinion of Consultative Examiner Tonya M. McFadden, Ph.D.

Neice argues that the ALJ improperly weighed the opinion of a consultative examiner, Tonya M. McFadden, Ph.D., in determining Neice's RFC. Dr. McFadden, a licensed clinical psychologist, examined Neice on March 5, 2012 on behalf of the Virginia Department of Rehabilitative Services. R. 784. Dr. McFadden diagnosed Neice with bipolar disorder, alcohol abuse, polysubstance abuse, personality disorder, back and elbow problems, and stress. R. 788. Neice had a Global Assessment of Functioning ("GAF") score of 50 at the time of the examination. R. 788. Dr. McFadden stated that "he would have difficulty interacting with co-workers and the public based on review of records and his reported loss of temper. It is also

6

likely he would have difficulty executing simple and repetitive tasks and to a much greater extent, detailed and complex tasks. Additionally, it is believed he would have difficulties dealing with the usual stressors encountered in competitive work." R. 789. The ALJ accorded Dr. McFadden's report "appropriate weight." R. 61.

When making an RFC assessment, the ALJ must assess every medical opinion received into evidence. 20 CFR §404.1527(c). Under 20 CFR §§ 404.1527(c)(1) and 404.1527(c)(2), the opinion of a consultative examining source receives greater weight than a non-examining source. Similarly, the opinion of a treating source receives greater weight than that of a consultative examining source. Medical specialists who have examined a claimant generally are accorded more weight than a general medical examiner as well. See Taylor v. Colvin, No. 7:13CV00536, 2014 WL 4385796, at *4 (W.D. Va. Sept. 4, 2014). In evaluating the weight to give the opinion of a consulting examiner, the ALJ must consider various factors, including the explanation and support for the opinion, as well as its consistency with the record as a whole. 20 C.F.R. §§ 404.1527(c), 416.927(c). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." S.S.R. 96–8p, 1996 WL 374184, *7 (July 2, 1996)).[4] The ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave" to the opinion and "the reasons for that weight." S.S.R. 96–2p, 1996 WL 374188, at *5 (July 2, 1996)).

The ALJ did not properly explain his decision to give "appropriate weight" to Dr. McFadden's opinion. The Fourth Circuit requires ALJs to "explicitly indicate the weight given to relevant evidence." Hines v. Bowen, 872 F.2d 56, 59 (4th Cir.1989). Here, the ALJ's choice

---

[4] "Social Security Rulings are interpretations by the Social Security Administration of the Social Security Act. While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995) (citing Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989)).

7

of "appropriate weight" provides little insight on the weight he gave to Dr. McFadden's opinion. See Wilbourn v. Astrue, No. 6:08–cv–00025–NKM, 2009 WL 2381305, at *7 (W.D. Va. Jul. 31, 2009) (Urbanski, J.) ("While the decision states that Dr. Oliver's opinion 'has been considered,' and 'is given appropriate weight,' it is difficult to discern just what weight was accorded Dr. Oliver's opinion."). At the court's hearing, both Neice and the Commissioner agreed that the ALJ gave "no weight" to Dr. McFadden's opinion. Dkt. No. 22. However, the ALJ appears to have accepted much of Dr. McFadden's findings when he wrote that Neice had an "inability to perform jobs that involve more than simple tasks; are not performed in a low-stress work environment; require more than occasional decision-making; or involve more than occasional interaction with co-workers or the public." Compare R. 61, with R. 789. The ALJ's impression of Dr. McFadden's report cannot be ascertained from his opinion.

If Neice and the Commissioner are correct in stating that no weight was given, the ALJ failed to explain his determination. The Commissioner contends that the ALJ met his duty by discussing Dr. McFadden's consultative examination; however, the ALJ did not state why this evidence should receive no weight. The ALJ did not accept Dr. McFadden's finding that Neice struggled with "markedly deficient recent memory" or that he faced severe difficulties interacting with people and responding to changes in a work setting (R. 789); the ALJ determined that Neice only had moderate limitations based on Dr. McFadden's "unremarkable" clinical findings. R. 61. Without the ALJ explaining the basis for his findings, it is unclear why he disregarded these parts of Dr. McFadden's opinion. Furthermore, it is unclear whether the ALJ gave weight to any medical opinion regarding Neice's mental impairments, or why they were superior to Dr. McFadden's opinion. Although the ALJ afforded great weight to the state agency physicians' opinions, it appears that he only reviewed their opinions for physical

impairments. R. 661; see also Dkt. No. 16, p. 8. Dr. McFadden provides the only medical opinion of Neice's mental impairments, and thus, without the consultative examination and Dr. McFadden's conclusions about Neice's mental limitations, the ALJ lacks a medical opinion to formulate his RFC of Neice's mental capabilities. I therefore recommend remanding Neice's claim to allow the ALJ to assign a clear weight to Dr. McFadden's opinion and provide an explanation for his decision.

**Additional Evidence**

Neice contends that his claim should be remanded for further administrative consideration on the basis of additional medical opinions that were not before the ALJ, but were later submitted to the Appeals Council. Specifically, Neice identifies psychological reports from Pamela S. Tessnear, Ph.D., which she developed based on an over three hour-meeting with Neice on December 11, 2012 and a review of his record. R. 7-8, 34-45. In his decision denying benefits, the ALJ considered Neice's bipolar disorder a severe impairment. The Appeals Council did not view Dr. Tessnear's mental impairment questionnaire or psychological evaluation as affecting the ALJ's decision because it was dated from a later time. R. 2. I find that remand is proper in light of this additional psychological evidence from Dr. Tessnear to allow the ALJ to consider the evidence in the record as a whole.

When deciding whether to grant review, the Appeals Council must consider additional evidence, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991). Evidence is new if it is not duplicative or cumulative. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. Id. The Appeals Council does not require good cause to admit previously

9

existing records.  Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991).  Upon the Appeals Council's denial of Neice's request for review, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 404.981.  As such, this Court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings.  Wilkins, 953 F.2d at 96.  "However, the Fourth Circuit has also admonished that it is the role of the ALJ, and not reviewing courts, to resolve conflicts in the evidence."  Davis v. Barnhart, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005) (citing Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)).  Thus, when faced with new evidence, a court must reconcile its duty under Wilkins to review the entire record including the new evidence to determine if there is a reasonable possibility that it would change the outcome, with its obligation under Smith to abstain from making credibility determinations and resolving factual conflicts.  Davis, 392 F. Supp. 2d at 751.

Courts in this district have achieved that balance by reviewing the record as a whole to determine if the new evidence is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports.  If the new evidence creates such a conflict, there is a reasonable possibility that it would change the outcome of the case, and the case must be remanded to the Commissioner to weigh and resolve the conflicting evidence.  If such conflicts are not present, the case can be decided on the existing record without a remand.  Id. (citing Bryant v. Barnhart, No. 6:04cv000017, 2005 WL 1804423, *5 (W.D. Va. Jan 21, 2005); Smallwood v. Barnhart, No. 7:03cv00749, slip op. at 2 (W.D. Va. Oct. 19, 2004); Ridings v. Apfel, 76 F. Supp. 2d 707, 709 n. 6 (W.D. Va. 1999); Thomas v. Commissioner, 24 F. App'x 158, 162, 2001 WL 1602103, at *4 (4th Cir. 2001) (unpublished opinion); McConnell v. Colvin, No. 2:02cv00005, 2013 WL 1197091, at *7 (W.D. Va. March 25, 2013)).

The administrative record shows that Neice suffers from numerous mental health impairments, causing the ALJ to find that Neice can only perform light work with mental limitations. R. 58. Medical records and assessments dated from March 2007 through January 2009 showed that Neice could fairly adjust to occupational, performance, and social changes despite diagnoses of bipolar disorder, anxiety, and past substance abuse. R. 404-05, 419, 426-27. However, Neice's condition worsened near the end of 2009. After complaining of auditory hallucinations at the New River Valley Medical Center in November 2009 (R. 477), doctors diagnosed Neice with bipolar disorder, schizoaffective disorder, dissociative disorder, and polysubstance dependence. R. 477-80. Over the next year, Neice checked himself into Southwestern Virginia Mental Health Institute, Princeton Community Hospital, and Giles Community Hospital with complaints of suicidal ideations and depression. R. 484-515, 565-612, 690-95. Collectively, the doctors at the three hospitals assessed Neice with a GAF score of 25 (R. 487) and diagnosed him with schizoaffective disorder (bipolar type), history of alcohol dependence, cocaine abuse, panic disorder with agoraphobia, dysthymic disorder, and personality disorder. R. 487, 497, 565, 694-95. At a psychiatric appointment with Patie Sandoe, MSN, FNP, Neice reported multiple suicide attempts and was diagnosed with both bipolar disorder with psychotic features and alcohol abuse. R. 735-36.

In addition to Dr. McFadden's previously discussed consultative examination, two state agency psychologists reviewed Neice's records and found that he was not significantly limited in his ability to understand and remember very short and simple instructions, and found that he was only moderately limited in his understanding and remembrance of detailed instructions. R. 160, 179. The psychologists also found that Neice was not significantly limited in making work-

11

Case 7:14-cv-00024-MFU-RSB    Document 23    Filed 02/19/15    Page 11 of 16    Pageid#: 1027

related decisions, only moderately limited in his ability to get along with the general public, and again moderately limited to responding to changes in the work setting. R. 161-62, 180.

The ALJ determined that Neice had a severe impairment of bipolar disorder, but found that he had only a mild restriction in activities of daily living and moderate difficulties in social functioning and concentration, persistence, and pace. R. 56-57. The ALJ appears to have provided no weight to Dr. McFadden's assessment and an unclear amount of weight to the two state agency psychologists' opinions. Accordingly, he found that the record as a whole supported the finding that Neice can handle simple, routine, repetitive tasks, in a low-stress work environment that involves only occasional interaction with coworkers or the public. R. 58.

On December 11, 2012, approximately six months after the ALJ's decision, Dr. Tessnear reviewed Neice's medical record and met with him for three hours for a comprehensive psychological evaluation. R. 34-45. Dr. Tessnear diagnosed Neice with bipolar disorder, panic disorder, rule out schizophrenia vs. schizoaffective disorder, and history of polysubstance abuse. R. 43. Her greatest concern was Neice's "reported psychotic symptoms which include auditory, visual and olfactory hallucinations." R. 43. Dr. Tessnear gave the opinion that Neice had moderate limitations in his ability to understand and follow simple instructions, cannot handle complex or detailed work, cannot work with the public, and likely would have problems working with coworkers and supervisors. R. 44. She also expressed concerns with his ability to concentrate due to hallucinations and his expected absences due to depression and mania. R. 44. Dr. Tessnear found "some exaggeration of complaints but that is not uncommon in individuals who have this level of psychiatric severity, and treatment records also support his claims." R. 43. On January 8, 2013, Dr. Tessnear noted that Neice has marked difficulties maintaining both social functioning and concentration, persistence, or pace; he also faced moderate restrictions of

12

activities of daily living and expected one to two episodes of decompensation within a 12-month period. R. 7.

I find that Dr. Tessnear's additional evidence meets the requirements of Wilkins, and that remand is proper for full consideration of these records. Although the Commissioner contended at the hearing that Dr. Tessnear's records are not new[5] and are cumulative with the medical record (Dkt. No. 21), the court finds no merit to this argument. The administrative record before the ALJ included diagnoses, a consultative examination, and treatment records for Neice's bipolar disorder and assorted mental impairments; however, none of the records examine Neice's mental health or provide recommendations with the depth of Dr. Tessnear's reports. Compare R. 34-45, with R. 404-05, 419, 477-80, 484-87, 570-72. Dr. Tessnear noted several marked deficiencies in Neice's mental abilities to do unskilled work (R. 7), wrote that he "suffers from multiple severe psychotic conditions which significantly limit his functioning" (R. 8), and provided extensive looks into Neice's psychiatric, substance use, and work histories. R. 34-38. The fact that Dr. Tessnear came to the same overall conclusion as Dr. McFadden does not mean her records are not new; they provide additional detail about Neice's condition and important information that is relevant to his claim. Dr. Tessnear's records plainly are new.

Dr. Tessnear's mental health medical records submitted to the Appeals Council also relate back to the relevant time period. Neice has struggled with bipolar disorder at least since 2008 (R. 404), and Dr. Tessnear's reports support his overall diagnosis. Dr. Tessnear's evaluations provide new information that could help the ALJ assess whether Neice could have worked during the relevant time period and that provide further support for the unaccepted assessment by Dr. McFadden. Moreover, the Commissioner has not pointed to any evidence that

---

[5] It is unclear whether the Appeals Council accepted Dr. Tessnear's opinions, as the Council indicated the records were returned yet still added them to the administrative record. R. 7-45.

13

Neice's condition worsened (or otherwise changed) between the ALJ's denial of Neice's initial claim on June 26, 2012 and the time of Dr. Tessnear's evaluation on December 11, 2012. Medical records about longstanding mental health issues, without evidence of an intervening event, generally relate back to the time of an ALJ's decision. See McGinnis v. Astrue, 709 F. Supp. 2d 468, 473 (W.D. Va. 2010) (remanding a denied claim to review additional records because the claimant's severe depression and intellectual difficulties likely did not change within the few months after the ALJ's decision). No evidence of an intervening event has been submitted to suggest why such a change in mental health could have occurred. Therefore, I find that Dr. Tessnear's records relate back to the relevant time period before the ALJ's decision.

Not only do Dr. Tessnear's records relate back to the relevant period, but also a reasonable possibility exists that these conclusions could change the outcome of the Commissioner's decision. Dr. Tessnear's records call into doubt the ALJ's determination that Neice's bipolar disorder does not amount to a disability. The law is clear that "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with the reviewing court." Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) (citing Kasey v. Sullivan, 3 F.3d 75, 79 (4th Cir. 1993)). In this case, no fact finder has made any findings as to Dr. Tessnear's reports. The ALJ's decision denying Neice's claims already are cast into doubt based on his treatment of Dr. McFadden's records; given the additional information about Neice's mental health provided by Dr. Tessnear, the ALJ may have to reconsider his determination that the evidence did not support a finding of disability. R. 61 (finding that the objective evidence only revealed moderate limitations in social functioning and concentration, persistence, or pace). Dr. Tessnear's thorough examination of Neice directly conflicts with the ALJ's findings, and her opinion that Neice faced marked difficulties in maintaining social functioning and marked deficiencies in

14

concentration, persistence, or pace ostensibly could change the ALJ's review of the record. R. 7. There is a reasonable possibility that Dr. Tessnear's in-depth mental health evaluations could change the ALJ's decision. Dr. Tessnear's reports are new, they relate back to the relevant time period, and they include severe diagnoses that may require additional restrictions, both by the ALJ and by any state agency examiners who did not have the opportunity to review Dr. Tessnear's records.

In light of the conflict between the ALJ's finding that Neice was not disabled and Dr. Tessnear's opinions, I am unable to determine whether substantial evidence supports the final decision of the Commissioner to deny benefits to Neice. The subsequent evidence provided by Dr. Tessnear calls into question whether the objective evidence in fact did not support a finding of disability. The ALJ did not have an opportunity to consider Dr. Tessnear's mental health evaluation of Neice. The ALJ has not evaluated what, if any, impact Dr. Tessnear's examination shows about Neice's functional ability. The court cannot speculate as to the influence of Dr. Tessnear's records on the ALJ's decision. It may be that evidence of Dr. Tessnear's records does not alter the outcome of the ALJ's analysis. That decision does not rest with the court, however, and as there is a sufficient probability that the additional evidence will change the outcome, the law requires that I remand the case. See, e.g., Burton v. Colvin, CA 4:11-03335-CMC, 2013 WL 3551120, at *3 (D.S.C. July 11, 2013) ("In light of the new evidence that appears to conflict with one or more critical bases in the ALJ's opinion, and the lack of explanation by the Appeals Council as to why that new evidence did not affect Plaintiff's disability determination, the court cannot say that the ALJ's decision is supported by substantial evidence."). I therefore recommend remanding Neice's claim under sentence four of 42 U.S.C. § 405(g) for consideration of this additional evidence and the record as a whole.

## **CONCLUSION**

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **REVERSING** and **REMANDING** the final decision of the Commissioner, **DENYING** summary judgment to the defendant, **GRANTING IN PART** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: February 19, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge